| AOC-105     Doc. Code: CI
Rev. 1-07
Page 1 of 1
Commonwealth of Kentucky
Court of Justice    www.courts.ky.gov
CR 4.02; CR Official Form 1 | **CIVIL SUMMONS** | Case No. 18-CI-1090
Court ☑ Circuit ☐ District
County Franklin |
|---|---|---|

**PLAINTIFF**

Dr. Lorna         Elle         Shaw         Ph.D.

VS.

**DEFENDANT**

Board of Regents of Kentucky State University
Dr. Christopher Brown II
400 East Main Street
Frankfort         Kentucky         40601

**Service of Process Agent for Defendant:**
Dr. Christopher Brown II
as agent for servicel for Board of Regents
400 East Main St.
Frankfort                             Kentucky         40601

**THE COMMONWEALTH OF KENTUCKY**
**TO THE ABOVE-NAMED DEFENDANT(S):**

You are hereby notified a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf** within **20 days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached Complaint.

The name(s) and address(es) of the party or parties demanding relief against you are shown on the document delivered to you with this Summons.

Date: 11/2, 2018                        [signature]                        Clerk
                                         By: [signature]                   D.C.

**Proof of Service**

This Summons was served by delivering a true copy and the Complaint (or other initiating document) to:

this ____ day of _____, 2_____.

Served by: _____
            _____ Title

**COMMONWEALTH OF KENTUCKY**
**FRANKLIN CIRCUIT COURT**
**DIVISION II**
**CASE NO. 18-CI-1090**



FILED
NOV 02 2018
FRANKLIN CIRCUIT COURT
AMY FELDMAN, CLERK

**DR. LORNA ELLE SHAW, Ph.d.**  **PLAINTIFF**

vs.

**KENTUCKY STATE UNIVERSITY**

and

**DR. M. CHRISTOPHER BROWN II, PRESIDENT**
**KENTUCKY STATE UNIVERSITY, in both his individual and**
**Official capacity**
and

**THE BOARD OF REGENTS OF KENTUCKY STATE UNIVERSITY, to wit:**
**DR. ELAINE FARRIS, CHAIRPERSON**
**MR. RON BANKS, MEMBER**
**MS. MINDY BARFIELD, MEMBER**
**DR. KAREN BEARDEN, MEMBER**
**MR. DERRICK GILMORE, MEMBER**
**MR. PAUL HARNICE, MEMBER**
**MR. DALTON JANTZEN, MEMBER**
**DR. ELGIE McFADDEN, MEMBER**
**DR. SYMALA H.K. REDDY, MEMBER**
**MR. ROGER REYNOLDS, MEMBER**

## COMPLAINT

### COUNT I

1. At all times and places complained of herein, the individual Defendants named herein comprised the governing Board of Regents and administration of the defendant Kentucky State University, an institution of higher learning located in Franklin County, Kentucky.

2. Jurisdiction over, and venue in this matter rests in the Franklin Circuit Court pursuant to the provisions of KRS 23A.010, KRS 61.103 (2) and KRS 344.450.

3. The Plaintiff, Dr. Lorna Elle Shaw (Berbick) is a female citizen of the United States of America and formerly a resident of Franklin County, Kentucky (now Florida).

4. At all times and places pertinent hereto, the Plaintiff was an "employee" of Kentucky State University within the meaning and application of KRS 344.040.

5. Kentucky State University was at all time and places pertinent herein the "employer" of the Plaintiff within the meaning and application of KRS 344.040.

6. Dr. Shaw, at all times pertinent hereto was a "person" within the meaning and application of KRS 344.280.

## COUNT II

1. Kentucky State University (hereafter "KSU") was created by an Act of the Kentucky General Assembly that authorized its governing body and leadership (as herein named) to enter into contracts of employment with persons for the providing of academic services to KSU and its students. KRS 164.290 (2); KRS 164.350.

2. The Plaintiff is a person who was personally recruited and hired by KSU in the Spring of 2015 under the authority of then President Raymond M. Burse to assume the duties of Dean of the University and as a tenured faculty member at the rank of Professor in the College of Arts and Sciences. Her agreed upon annual salary was One Hundred, Eighty Thousand and No/100 ($180,000.00) Dollars.

3. The offer of employment was made by letter to the Plaintiff from the then President of KSU dated May 6, 2015 and accepted the same day by her. (See attached Exhibit A). Although Exhibit "A" states that it does not form a contract, no other written agreement was ever forthcoming nor is there any other memorandum of the parties agreement contained in

Plaintiff's personnel file except a "PAF Preview" in Plaintiff's official personnel file that ratifies her position and salary as set out in Dr. Burse's letter..

4. The parties ratified the agreement by their mutual acceptance of its terms and their mutual reliance thereon over an extended period of time.

5. In reliance on the offer and acceptance set out in paragraphs 1 and 2 herein above, the Plaintiff accepted employment and physically removed herself to Franklin County, Kentucky in order to perform her assigned job duties as Dean of the University.

6. The Defendant's solicitation and hiring was based upon conditions that the Defendant, its agents and officers knew, or should have known were not true and constituted false, misleading and deceptive acts or practices in violation of the provisions of KRS Chapter 367.170 and KRS 367.175 *viz.* a "bait and switch" scheme concocted by then President Burse and colluded in by the Board of Regents and other unnamed employees of KSU to attract and hire highly qualified educators to come to work for KSU, then demote them and reduce their rate of pay, knowing that they would be unable to afford to simply resign from employment to search for new employment during the middle of an academic year..

7. In fact, within seven (7) months of accepting the proffered appointment and prior to the end of her first semester at KSU, the Plaintiff was sent a letter over the signature of Vice President for Academic Affairs Lynda Brown-Wright that relieved her of her duties as Dean of the University, remanded her to a faculty teaching position and cut her salary without any reason being given for the actions proposed. See Attached Exhibit B).

8. Regardless of why she was removed from the position of Dean of the University, the agreement contained in the May 6, 2015 letter of employment mentioned nothing about her

salary being adjusted and she did not agree to either the change of duties and responsibilities or to any adjustment in her rate of pay.

## COUNT III

1. In fact, the Plaintiff did not revert to a faculty teaching position, but retained her classification as "VP Academic Affairs/Provost", but was placed in a position designated (unbeknownst to her) as a "Special Projects Coordinator" at an annual salary of Ninety-Nine Thousand and No/100 ($99,000.00) Dollars per year, a decrease in her agreed upon compensation of some Eighty-One Thousand and No/100 ($81,000.00) Dollars per year (See Exhibit C ). Subsequent to her demotion, she was not given a specific position by Dr. Burse, but his successor, Dr. Aaron Thompson told her that her position was that of Assistant Provost, then Associate Provost of the University. That was untrue.

2. Dr. Burse had been dismissed as President of KSU in March of 2016 and replaced by Dr. Aaron Thompson.

3. Through 2016, the Plaintiff continued to function as a high level administrator for KSU, developing and founding the Kentucky State University Institute for Lifelong Learning

4. In April of 2017, at about the time that President Aaron Thompson was fired by the Board of Regents and replaced with the Defendant M. Christopher Brown II, and as the direct and proximate result of the stress to which she had been subjected, the Plaintiff suffered a cardiac event that required her hospitalization and subsequent absence from KSU under the terms of the Family and Medical Leave Act. She remained disabled and physically unable to work until December of 2017, when she returned to Franklin County and reported to work for the Winter-Spring, 2018 semester.

4

5. Although she had returned to work, the Plaintiff was essentially ignored by the new administration. She was "cut off" from communication with the Provost's Office (for whom she purportedly worked) and, although there was no evidence of any personnel action against her, her pay was cut off. Despite the foregoing, the Plaintiff reported every day to her work station and performed her job duties as she understood them to be.

6. Through counsel, she contacted the office of President Brown and it was determined that it would be in the best interests of both parties if she and the University could come to an agreement on fair terms for her voluntary resignation from KSU.

7. Negotiations were initiated between counsel for the Plaintiff and counsel for the University that resulted in an offer and acceptance of a severance agreement between Dr. Shaw and the University. This agreement was drafted by counsel for the University and tendered for signature and acceptance by the Plaintiff herein, who duly executed the agreement (Attached hereto and made a part hereof as Exhibit D).

8. Subsequent to the execution of the foregoing agreement by the Plaintiff, counsel for the University contacted the undersigned and stated that the President was unaware that payments over a certain amount had to be approved by the Board of Regents. However, the Plaintiff was assured that such agreement was a formality only, and that upon ratification of the agreement by the Board of Regents, the President would sign and forward the agreement along with payment of the agreed upon back salary to the Plaintiff.

9. By letter of April 19, 2018, the Plaintiff was notified that contrary to the representations by the President's office, the agreement authored and tendered for acceptance by the President's office had been rejected by the Board of Regents, but that a small amount could be offered if she would settle. (Attached hereto and made a part hereof as Exhibit E).

10. The Defendant Brown, both individually and in his capacity as President of Kentucky State University knew, or should have known, that he was not authorized to negotiate with the Plaintiff, but did.

11. Defendant Brown, both individually and in his capacity as President of Kentucky State University knew, or should have known, that the agreement negotiated, drafted and tendered to the Plaintiff by the Defendant was *ultra vires* his authority to obligate the funds of the University, but did not so inform the Plaintiff until she had executed the agreement.

12. The members of the Board of Regents had a duty to familiarize themselves with the facts of this matter before they summarily rejected the offer made on their behalf and accepted by the Plaintiff herein.

## COUNT IV

1. The Plaintiff, a tenured faculty member, has been effectively terminated in violation of the provisions of KRS 164.360.

2. The Plaintiff, a female who is highly qualified and nationally recognized in her field, was disparately treated by her initial supervisor, Dr. Raymond Burse, then Dr. Aaron Thompson and Dr. Christopher M. Brown II from other, less qualified, male members of the faculty and staff.

3. The Plaintiff did not resign her position on either the staff or faculty, but was effectively evicted from the campus when her office space was reassigned and she was assigned no duties for the academic year.

4. The Plaintiff was then induced to leave campus by the representation that she would be provided with a "termination package" in the amount of $61,307.34.

5. As set out herein above, the Plaintiff was presented with a Severance Agreement and General Release drafted by counsel for the University and tendered to her for her acceptance and signature under the admonition that if she did not agree to it then she would get nothing. See attached Exhibit D.

6. The Plaintiff did execute and sign the agreement as demanded, but was then told that the agreement had to be ratified by the Board of Regents because the President did not have the authority to promise to pay University funds in excess of a certain amount, which was exceeded by the Agreement drafted and tendered to the Plaintiff by the Office of the President.

7. Thus, the Defendants, either in person or by agent, induced the Plaintiff to sign a Severance Agreement and General Release by fraudulently inducing her to execute and rely upon the terms of the agreement.

8. The Board of Regents compounded the fraud by refusing to approve the agreement drafted by University counsel, agreed to, presented and ratified by the President of the University.

9. The university has not formally terminated the Plaintiff, who retains her tenure in the institution, but it has, through the actions of its administration made it impossible for the Plaintiff to attend to or perform duties as she is completely cut off from any type of support, thus having been terminated *de facto*.

## COUNT V

1. "Tenure" as utilized and understood by the Plaintiff, Kentucky State University and Kentucky law embraces the concept of permanent security in the academic position held by the "tenured" person. Board of Regents of Kentucky State University v. Gale, 898 S.W.2d 517, 521 (Ky. App., 1995).

2. The Kentucky State University (KSU) Handbook states as follows regarding the tenure of faculty members such as the Plaintiff:

    2.6.3 Tenure Policies and Standards

    2.6.3.1 Purpose and Duration

    The University established academic tenure as an important means for protecting academic freedom, providing employment security and promoting institutional vitality and stability. This privilege, granted by the institution, has distinct legal, societal and ethical implications.

    Tenure extends from the date of its award to the date of Retirement, and may be abrogated only by a reduction in the work force, a discharge for cause, resignation, disability or death.

3. KRS 164.360 requires prior to the discharge of a tenured faculty member at KSU such as the Plaintiff, "ten (10) days notice in writing stating the nature of the charges preferred, and after an opportunity has been given (the tenured faculty member) to make a defense before the (Board of Regents) by counsel or otherwise and to introduce testimony which shall be heard and determined by the Board."

4. Section 2.8.5.1 of the KSU Faculty Handbook incorporates and quotes KRS 164.360.

5. Plaintiff was never formally terminated from her position. Her pay and duties were simply dissolved. She was never charged with anything and the only thing she was "guilty of" was being sick.

6. Thus, contrary to both KRS 164.360 and the KSU Faculty Handbook, Dr. Shaw was effectively terminated from her tenured position as a Professor in the College of Arts and Sciences without ten (10) days notice, without notice of any charges preferred against her, and without the opportunity to be heard by the KSU Board of Regents.

8

7. No substantive grounds existed, or could be thought reasonably to exist to support or justify Dr. Shaw's *de facto* termination from her tenured position as a Professor in the College of Arts and Sciences. In fact, Dr Shaw has never been accused of anything that would justify her termination from a tenured position other than being sick and an inconvenient left over from a disturbing period in KSU's history.

8. The Board of Regents was made aware of her situation, the remedy crafted by the President and the relatively minor cost of rectifying the injustice done to Dr. Shaw. The Board elected to ignore the problem by refusing to approve the agreement.

## COUNT VI

1. All previous allegations contained herein above are hereby adopted, re-published, incorporated by reference herein and made a part hereof the same is if set out in words and letters.

2. The Plaintiff has been unlawfully terminated from her employment in the tenured position of Professor in the College of Arts and Sciences at Kentucky State University.

3. As the direct and proximate result of the wrongful and unlawful actions of Drs. Burse, Thompson and Brown as well as the ratification of those actions by the Board of Regents, the Plaintiff has suffered and is reasonably certain to continue to suffer in the future injuries and damages including, but not limited to loss of income, damage to her professional reputation and standing in the academic community, emotional distress, mental anguish and embarrassment, personal humiliation and violation of her statutory and constitutional rights in an amount to be subsequently determined, but sufficient to invoke the jurisdiction of this honorable court.

4. Further, the Plaintiff was treated differently from her male colleagues based on her sex (female), age and condition of her health in the terms and conditions of her employment regarding the compensation paid her as Dean of the University and as a tenured faculty member at the rank of Professor in the College of Arts and Sciences.

5. As the direct and proximate result of the unlawful discrimination to which she ws subjected in the terms and conditions of her employment, the Plaintiff has suffered monetary damages, including lost pay and financial injury as more particularly set out herein above.

6. Plaintiff's treatment regarding pay, position and tenure and her negative treatment by the administration was based on her sex (female), age (61) and health problems, all of which are protected within the meaning of KRS 344.280 and the Americans with Disabilities Act.

7. The rejection of Plaintiff's Severance Agreement by the Board of Regents and the *de facto* termination of her employment without any due process constitutes unlawful retaliation in violation of KRS 344.280.

8. As the direct and proximate result of the unlawful retaliation to which she has now been subjected by the Defendants, the Plaintiff has suffered and is reasonably certain to suffer in the future injuries and damages including loss of income and benefits, damage to her professional reputation and standing, emotional distress, mental anguish, embarrassment, humiliation and an ongoing violation of her statutory and contractual rights.

**WHEREFORE**, the Plaintiff, Dr. Lorna Elle Shaw, Ph.D. demands entry of judgment against the Defendants as follows:

1. Reinstatement to her position as Dean of the University and tenured Professor in the College of Arts and Sciences with all of the pay and emoluments of office pertaining thereto.

2. Back pay equalling salary in the sum of One Hundred, Eighty Thousand and Np/100 ($180,000.00) per year to May 26, 2015 with credit to the University for sums previously paid.

3. Monetary damages in an amount to fairly compensate her for her injuries sufferd as the direct and proximate result of the breach of contract and associated actions as pled herein, including loss of income and benefits, loss of professional standing and reputation, emotional distress, mental anguish, embarrassment and humiliation.

4. Punitive damages against Dr. Brown for his disparate treatment of her in violation of the provisions of KRS Chapter 344.

5. Her attorney's fees, court costs, and litigation expenses incurred herein in accordance with KRS 344.450 and CR 54.

6. Any and all other relief to which she may be entitled.

**STEVEN G. BOLTON**
**ATTORNEY FOR PLAINTIFF**
**213 ST. CLAIR STREET, SUITE 202**
**FRANKFORT KY 40601**

## VERIFICATION

I hereby verify and attest that I have read the foregoing Complaint and that the factual allegations contained therein are true and correct to the best of my knowledge and belief.

*Dr. Lorna Elle Shaw, Ph.D.*

**COMMONWEALTH OF KENTUCKY**

**COUNTY OF FANKLIN**

Subscribed and sworn to before me by Dr. Lorna Elle Shaw, Ph.D. this 1st day of November, 2018.

Notary Public, KY State-at-Large

My commission expires September 27, 2020.

## JURY DEMAND

Comes the plaintiff herein, by counsel, and hereby demands a trial by jury on any and all triable issues of fact.

_____
Steven G. Bolton
Attorney for Plaintiff
25 Fountain Place
PO Box 502
Frankfort, KY 40601
(502)227-2001

AMY FELDMAN
FRANKLIN CIRCUIT COURT
222 ST. CLAIR ST
FRANKFORT, KY  40601

DR CHRISTOPHER BROWN II
400 EAST MAIN STREET
FRANKFORT, KY  40601